**ROBERT C. PREAST,**

       **Plaintiff,**

**v.**                              **Case No. 8:10-cv-2510-T-35TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

      The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. Despite the protracted history of this case, I recommend that it once again be reversed and remanded for further consideration because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.

I.

      Plaintiff was forty-years old at the time he filed for benefits in March 1999. He has a tenth grade education and former work as a production supervisor for a tile company. Plaintiff applied for disability benefits and Supplemental Security Income payments alleging disability as of May 15, 1998, by reason of anxiety, depression, stress, a fractured vertebra, pain in the hips and legs, and high cholesterol. Plaintiff's applications were denied originally

and on reconsideration. Plaintiff received his first *de novo* hearing before an Administrative Law Judge ("ALJ") in April 2000. The ALJ denied the applications by decision of December 11, 2000. (R. 16-26). That decision was reversed by this court on the Commissioner's motion for remand on November 24, 2002. (R. 354).[1] In accordance with the court's Order, the Appeals Council thereafter vacated the decision and directed further proceedings before an ALJ. (R. 355-56). The administrative hearing on remand was conducted February 3, 2005, before a different ALJ. Plaintiff and a vocational expert ("VE") testified. (R. 319-53). The ALJ denied the applications by decision of November 28, 2005. (R. 303-13). That decision was reversed and remanded by Order of this court dated September 16, 2009. (R. 562). The Appeals Council again vacated the decision and directed further proceedings before an ALJ. (R. 604). The hearing on remand was conducted February 2, 2010, before a different ALJ. Plaintiff and another VE testified. (R. 683-701). The applications were again denied by decision dated March 17, 2010. (R. 551-610). Plaintiff had representation at each of the administrative hearings.

A review of the first two administrative hearings reflects the following. At the hearing in April 2000, Plaintiff testified that he could no longer work due to pain in his head, shoulders, and extremities and because of anxiety and depression. He fractured a vertebra in 1990 when he fell off a kiln. He had years of pain that came to a head in 1998 when he just could not take it anymore. He claimed he was terminated in May 1998. He took numerous

---

[1] It appears that another application for benefits was filed during that appeal. It was denied and then incorporated into this file. (R. 321).

medications for his pain, anxiety, and depression. While his medications helped some, they caused him confusion, trouble with his bowels, fatigue, nervousness, and difficulty sleeping.

Plaintiff could stand for ten to fifteen minutes and sometimes for thirty minutes, but then his back and legs bothered him. He had difficulty sitting comfortably and had to change position because his back, neck, and shoulders bothered him. He could walk about a half block but he had problems walking stairs and on uneven ground, and he got dizzy and his back hurt. He could squat and bend but with pain. Lifting hurt his back and legs. He had a problem with numbness in his arms and pain in his hips. His most comfortable position was lying down with his legs propped up.

His anxiety affected him being around others. He claimed his heart races, and he feels pressure, fear, and the need to get away. His depression caused him to feel worthless and confused. He had difficulty remembering things and making decisions.

Plaintiff could take care of his personal needs, his home, and his yard, but he had to take his medications and breaks. He attended church a couple times each week and he drove, but only when he had to. (R. 51-72).

In anticipation of the administrative hearing in February 2005, the ALJ obtained updated evidence related to an orthopedic evaluation by Dr. Jesse Morgan, M.D. and a psychological assessment by Dr. Tracey Henley, Psy.D. Plaintiff testified at that hearing that his anxiety started in 1986 or 1990 or somewhere in that area. He missed a lot of work because of that condition although he worked until May 1998 when he felt he could no longer function physically or mentally. He had headaches, neck and shoulder pain, back pain, his legs ached from his knees down, and his hips felt tense. He attributed his head and neck pain

to being hit in the head by a fellow employee with a wrench in 1984 or 1985.  He fractured

his back when he fell off a kiln.  He said he had a screw in his hip but he could not explain

where that came from.  He again testified that he attempted to return to work in August 1998

but that lasted only two weeks.  He collected unemployment benefits for a while.  He also

received a settlement on a claim that he was wrongfully terminated.

Plaintiff indicated that his pain was at a level of five to six back at that time and it

has gotten worse, up to an eight or nine.  His right leg ached and this affected his walking.

Plaintiff had emotional difficulties in May 1998 as well.  His memory and

concentration were poor.  He had problems writing reports.  He had panic attacks, cried a lot,

was anxious, had no energy, and had difficulty making decisions.  He had thoughts of suicide.

His problems continued and have gotten worse.  He also had problems sleeping, suffered

nightmares, and heard voices.  He took a variety of medications to help him sleep, for muscle

spasms, headaches, pain, depression, nerves, and anxiety.  They made him feel weak,

unstable, high, groggy, dizzy, nauseous, and bloated.  They also caused problems with his

bowels.

Plaintiff testified that he was highly limited by his assorted aches and pains.  He

stated that he could not sit for six hours in an eight-hour workday due to pain and numbness.

He could sit comfortably for only fifteen to twenty minutes.  He could not stand or walk for

two hours in an eight-hour workday because of the aches and pain.  He could only stand for a

minute or two comfortably.  He could walk fifteen or twenty feet comfortably.  He had

problems walking on uneven ground.  He could not lift a gallon of milk repetitively.  His

fingers went numb, his grip was weak, and he had difficulty writing.  The numbness in his

hands caused him to drop things four or five times a day.  He could not stoop for long and bending hurt too bad.

During the day he lay down on the floor or in bed about three hours.  He used a recliner for four or five hours.  His fingers and toes went numb when he was in the recliner. He could not sleep well and alternated between the bed and the floor.  His wife did most of the household chores.  He had no hobbies and did not socialize.  He had trouble making decisions.  He had to reread things.  He did not drive much because of his conditions.  (R. 322-44).[2]

At his most recent administrative hearing in February 2010, the ALJ indicated that he had read the prior hearing transcripts and counsel confirmed that Plaintiff's condition had remained the same.  On limited inquiry, the Plaintiff testified his wife has been on disability since 1995 because of a back injury suffered in a motor vehicle accident.  He was able to pay off his mobile home in 2003 with funds from his retirement account.  He claimed to have suffered a nervous breakdown in 1998.  He took a leave of absence and he received some disability benefits and later some unemployment benefits.  He tried to return to work for a couple of weeks but that ended unsuccessfully.  (R. 684-92).

Richard Hall, a VE, classified Plaintiff's past work as medium exertional, skilled work with transferable skills related to mathematics, active listening, problem identification,

---

[2]Additionally, at each of the first two hearings the ALJ had before him medical records outlining the Plaintiff's medical history.  Vocational expert testimony was taken at both hearings as well.  On each occasion, the ALJ concluded Plaintiff was not disabled from all work.  Pertinent to the issues in this case is the fact that Plaintiff's date last insured for disability benefits was December 31, 2003.

reading comprehension, writing, and project inspection. On a hypothetical posed by the ALJ that assumed an individual of Plaintiff's age, education and work experience capable of light exertional work with moderate mental-related limitations, the VE indicated such person could not do Plaintiff's former work but could do work as a clerk, meter reader, and mail handler. If such individual had a marked limitation in carrying out detailed instructions, no such work was available. However, the individual could still perform jobs such as mail clerk, cleaner, and marker. On questioning by Plaintiff's counsel and assuming limitations imposed by Dr. Urso (Exhibit 30F), the VE testified no work would be available. Similarly, if the assessment by Dr. Henley (Exhibit 25F) concerning mental limitations was adopted, no work would be available. (R. 692-700).

By his decision of March 17, 2010, the ALJ determined that while Plaintiff has severe impairments related to status post fracture of the T12 vertebrae and a bipolar disorder, he nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 551-61). At the time of this decision, Plaintiff was fifty-one years old.

On or about April 14, 2010, Plaintiff requested review of the decision. Therein, Plaintiff requested a copy of the file, a transcript of the hearing, and an extension of time to file a memorandum. Among several exceptions to the decision, Plaintiff expressly complained that a report received post-hearing and referenced by the ALJ had not been forwarded to Plaintiff and evidence that had been filed by him was not mentioned. (R. 545-

6

46).  On June 30, 2010, the Appeals Council provided a copy of the transcript and granted

Plaintiff an extension of time but the requested report was not provided.  (R. 543-44).  On

September 9, 2010, the Appeals Council denied Plaintiff's request for review and the ALJ's

decision became the final of the Commissioner.  (R. 540-42).

II.

In order to be entitled to Social Security disability benefits and Supplemental

Security Income payments, a claimant must be unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."

42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is

one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at

§ 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  *See*

*id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84

F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and

demonstrate that he has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton*

7

*v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff demands a "remand and reversal with an immediate award of benefits" on a number of grounds including that he was denied due process and equal protection and because the ALJ failed to give proper weight to the opinions of certain doctors, recognize impairments, apply SSR 96-8p, find that Plaintiff's condition met a listing, and employ a hypothetical question that was supported by substantial evidence. (Doc. 15). For the reasons

set forth below, I conclude that Plaintiff is entitled to relief on his first two claims such that a remand for further consideration is warranted.

## A.

By his first claim, Plaintiff urges the denial of due process and equal protection[3] because he was not timely provided a copy of the report of a consultative examiner, Arthur J. Pasach, M.D., (R. 669-80), who examined Plaintiff shortly before the last administrative hearing and opined that, on the basis of his present symptoms, Plaintiff was not employable. (R. 671). The report was filed with the SSA after the hearing and referenced by the ALJ in the decision even though Plaintiff had not received a copy of it. Citing *Hudson v. Heckler*, 755 F.2d 781(11th Cir. 1985), Plaintiff urges that he was denied the opportunity to subpoena and cross-examine the witness and to comment on his findings. He further complains that the Appeals Council compounded the error by failing to honor his request for a copy of the file made in connection with his request for review. Therein, Plaintiff notified the Appeals Council that the ALJ had received a medical report post-hearing that was not provided to him, and again no copy was provided to him.[4] (Doc. 15 at 1-3).

---

[3]Because Plaintiff provides no support for his equal protection claim, the court need not address it further. *See* (Doc. 9 at 1-2) (providing that the Plaintiff must identify with particularity the discrete grounds upon which the decision is challenged and any such challenges "must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards. Any contention for which these requirements are not met is subject to being disregarded for insufficient development.").

[4]Furthermore, Plaintiff filed a motion to vacate the decision of the Appeals Council on September 28, 2010. (Doc. 15 at 14-17). It does not appear that the ruling of the Appeals Council is included in the administrative record.

In response, the Commissioner concedes that the ALJ and Appeals Council erred in not providing Plaintiff with Dr. Pasach's report but urges that a remand is not warranted because he was not prejudiced by this error. More particularly, the Commissioner urges that because the doctor's opinion supported Plaintiff's claim of disability, it is unlikely that Plaintiff would have subpoenaed the doctor or cross-examined him, and even though Plaintiff was unable to address the ALJ's decision to give the doctor's opinion little weight, Plaintiff has the opportunity to do so before this court. In support, the Commissioner cites *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997) and *National Labor Relations Board v. Wyman-Gordon Co.*, 394 U.S. 759 (1969). (Doc. 16 at 5-6).

In this circuit, "[d]ue process is violated when a claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports." *Hudson*, 755 F.2d at 784 (citations omitted); *see Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). Thus, where the ALJ has relied upon written reports submitted after the administrative hearing and the claimant is not afforded the opportunity to examine or challenge the reports and cross-examine the doctor prior to the ALJ's decision, there is a denial of due process which requires the decision be invalidated. *Cowart,* 662 F.2d at 737 (citing *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir.1979)). In *Graham*, the court stated that, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id.*

Upon consideration of the record and arguments presented, I conclude that there is a denial of due process that renders the decision invalid because the ALJ relied upon the post-hearing written report of Dr. Pasach and the Plaintiff was not afforded the opportunity to examine the report prior to the ALJ's decision. *See Cowart,* 662 F.2d at 737; *but see James v. Barnhart*, No. 05-16238, 2006 WL 995363, at *1 (11th Cir. Apr. 17, 2006). Undoubtedly, Dr. Pasach's report should have been provided to Plaintiff in the first instance by the ALJ and subsequently by the Appeals Council, and the Commissioner does not contend otherwise. As for resulting prejudice, I recognize that this case is not illustrative of typical prejudice, i.e., where the ALJ relies on a post-hearing report that directly contradicts the medical evidence that supports the plaintiff's claim and the plaintiff is not given an opportunity to examine the report or subpoena or cross examine the doctor. Nevertheless, and despite Plaintiff's vague demonstration of prejudice, I conclude there is clear prejudice and unfairness in that the Plaintiff was not given an opportunity to examine the report before the ALJ's decision.[5] Had he been able to do so, not only could he have argued a more persuasive case for disability from the outset, but he also would have had a basis to request further examinations or a supplemental hearing. Further, the evidence was not cumulative because it was the only

---

[5]Dr. Pasach's opinion is addressed with greater detail below. However, pertinent to this claim, the doctor suspected some neurological involvement and recommended that Plaintiff be reevaluated to rule out spinal cord injury or spinal stenosis, recommended that Plaintiff be seen by a psychiatrist for the purpose of improving his bipolar symptoms, and assessed Plaintiff with a number of limitations including that Plaintiff was unable to sit, stand, and walk on a sustained basis to allow for even sedentary exertional work. (R. 669-80). This doctor's opinions take on greater significance when considering the record in its entirety because he and Dr. Urso are the only doctors that examined Plaintiff from 2005 through 2010 and their opinions are not inconsistent.

medical evidence from 2010 and it did not contradict the treating doctor's reports from 2005

to 2009.  It also could have been determinative of the ALJ's decision.[6]  In light of the above, I

am unwilling and unable to find the error(s) harmless as urged by the Commissioner.

B.

Plaintiff next argues that the ALJ erred by failing to state the weight given to the

opinions of Drs. Freid, Dee, McGregor and Cervantes and those from Mr. Conti, a mental

health counselor.  And, although some indication was given by the ALJ for the weight

afforded the evidence from Drs. Morgan, Urso, Henley, and Pasach, as well as the state

agency doctors, Plaintiff contends that evidence was not properly assessed.  Thus, as for Dr.

Morgan, Plaintiff urges that the ALJ's statement of according his opinion "some weight" is

insufficient.  As for Dr. Urso, Plaintiff maintains that, contrary to the ALJ's finding, the

doctor's opinion is supported by objective medical findings by the doctor that Plaintiff had a

history of a fractured T-12 vertebra that resulted in chronic back pain and peripheral

neuropathy in the legs.  Plaintiff also urges that there is no conclusive evidence to counter Dr.

Urso's opinion.  Because the ALJ did not properly refute this opinion, Plaintiff urges that Dr.

Urso's opinions must be accepted as true and thus benefits should be awarded.  As for Dr.

Henley's opinion, Plaintiff urges it too was not properly considered, and as for Dr. Pasach's

---

[6]The Commissioner's prior letters to Plaintiff are also illustrative of the resulting
unfairness and prejudice.  In particular, on two other occasions the SSA sent counsel letters
informing counsel that the ALJ had secured additional evidence and that counsel could submit
written comments, a written statement as to the facts and law that apply, and questions to send
to the author of the report.  Counsel was also advised that he or she may request a
supplemental hearing in light of the additional evidence and request an opportunity to
question the author.  *See, e.g.* (R. 357-60).  Plaintiff and counsel were not advised of the same
with respect to Dr. Pasach's report.

opinion, the ALJ failed to provide adequate reasons to discount it. Additionally, Plaintiff contends that the ALJ did not develop a full and fair record given Dr. Henley's opinion that Plaintiff should have further psychiatric evaluation and Dr. Pasach's opinion that it would be appropriate to have Plaintiff reevaluated to rule out spinal cord injury or spinal stenosis. (Doc. 15 at 3-7).

In response, the Commissioner urges that given the ALJ's discussion of the evidence from Drs. Freid, Dee, McGregor, and Cervantes and from Mr. Conti, it is readily apparent that he implicitly gave great weight to this evidence, which was consistent with the ALJ's own findings and generally supported the ALJ's conclusions. Further, the Commissioner urges that the ALJ appropriately gave little weight to the opinion of Dr. Urso because it was unsupported by the objective medical evidence. While Plaintiff had an injury to his T-12 vertebrae in 1990 and earlier head and neck injuries in the mid-eighties, he worked until 1998 and thus his injuries could not have limited Plaintiff to the extent found by this doctor. The Commissioner also notes that Dr. Urso's opinion conflicted with the opinions of consulting examiners Drs. Morgan and McGregor. Regarding Dr. Pasach's opinion, the Commissioner urges that the ALJ appropriately accorded it little weight because it was both internally inconsistent and inconsistent with the reports from Drs. Morgan and McGregor. As for Dr. Henley, the Commissioner contends that it was reasonable for the ALJ to discount her opinions as well given that she questioned her ability to assess Plaintiff. Finally, the Commissioner urges that the record, which included evidence from at least eight doctors and a mental health counselor, was adequate to permit a decision without further development. (Doc. 16 at 7-13).

In this case the pertinent period under consideration is from Plaintiff's alleged onset date in May 1998 through the date of decision in March 2010. Although Plaintiff was only insured through December 2003, the evidence dated thereafter is pertinent to his claim for SSI payments. Despite the almost twelve-year treatment period and the lengthy procedural history of this case, the medical and psychological records are somewhat sparse. The mental health record consists of: (1) four visits to mental health counselor Anthony Conti in 1998 and a mental residual functional capacity assessment completed by him in March 2000;[7] (2) a consultative evaluation in June 1999 by Joel Freid, Ph.D.;[8] (3) a consultative evaluation in May 2002 by Henry L. Dee, Ph.D.;[9] (4) a consultative evaluation in November 2004 by Tracey G. Henley, Psy.D.;[10] and (5) mental residual functional capacity assessments by non-

[7]Mr. Conti assessed an adjustment disorder with anxiety. (R. 264-68). He identified seven moderate limitations in Plaintiff's mental functioning and opined that Plaintiff "could attempt a return to employment on a limited time status with the intentions of then increasing to full duty with no limitations." (R. 260-63).

[8]Dr. Freid assessed major depression and a generalized anxiety disorder. He recommended treatment but did not identify an limitations. (R. 212-15).

[9]Dr. Dee assessed bipolar disorder. The bulk of his examination was fairly normal but he noted some deficits in memory and opined that Plaintiff had cognitive deficits typically associated with brain dysfunction. The psychologist recommended further evaluation for intellectual capacity and neuropsychological screening. He also opined that Plaintiff's ability to manage his own affairs was questionable. (R. 437-39).

[10]Dr. Henley assessed panic disorder without agoraphobia, bipolar disorder, rule out psychotic disorder, and rule out malingering. She commented that Plaintiff demonstrated inconsistent effort throughout the evaluation and the current results were questionable given his current mental status. She also reported that Plaintiff likely was exaggerating his level of symptomology in order to obtain benefits, and he obtained an invalid profile on the MMPI-2 due to his pattern of responding to items inconsistently. Nonetheless, she noted that Plaintiff would require a payee to manage his benefits if benefits were awarded. (R. 516-19). Dr. Henley also completed a statement on Plaintiff's ability to work wherein she identified two extreme limitations, six marked limitations, and two moderate limitations. (R. 520-22).

examining, state agency psychologists in 2002.[11]  The physical health record consists of: (1)

treatment notes from 2002-2009 by Dr. Urso;[12] (2) a consultative examination by Jeanne

McGregor, M.D., in May 2002;[13] (3) a consultative examination by Ricardo Cervantes, M.D.,

in October 2002 ;[14] (4) physical functional capacity assessments completed by a single

---

[11]One state agency psychologist identified one marked limitation and six moderate limitations.  (R. 463-66).  The other identified eight moderate limitations.  (R. 500-03).

[12]Dr. Urso is the only treating doctor of record.  His records primarily document medication management.  He noted a history of a fractured vertebra at T-12 resulting in chronic back pain and peripheral neuropathy involving the legs; symptoms of bipolar disorder; pain in the shoulder, neck, legs, lower back, and cervical dorsal region; and a pinched nerve in the cervical spine with referral to the right hand.  (R. 468-72, 534, 536-37, 661-68).  The doctor wrote letters on Plaintiff's behalf in 2000 and 2002 that essentially said Plaintiff was disabled.  (R. 467, 534-35).  He also completed a statement on Plaintiff's physical capacity in February 2005.  Therein, Dr. Urso opined that Plaintiff could lift only five pounds, stand for one hour in an eight-hour day, sit for four hours in an eight-hour day, had occasional postural and handling/feeling/pushing limitations, and could never stoop or crouch.  (R. 538-39).  At the last administrative hearing, the VE opined that no work would be available if Dr. Urso's statement was credited.  (R. 698-99).

[13]Dr. McGregor reported vague pain on palpation of the cervical spine without spasm; vague pain on palpation of the thoracolumbar spine with muscle spasm; decreased range of motion in the neck, back, shoulders, elbows, hips, and knees; normal grip and motor strength but decreased sensation in the right hand; slight decreased strength in the left lower leg; negative seated leg lifts; and normal deep tendon reflexes.  (R. 443-47).  Further, the doctor reported that an x-ray of the lumbosacral spine showed a mild increase in lumbar lordosis, a moderate increase in lumbosacral angulation, and minimal multilevel degenerative spurring in the mid lumbar region.  (R. 448).  Dr. McGregor did not address Plaintiff's functional capacity.

[14]Among other things, Dr. Cervantes reported positive straight leg raises, diminished sensation in both hands and forearms, and tenderness at the T-12 level.  Regarding Plaintiff's functional ability, the doctor stated "[t]he claimant has impairment for sitting and standing for long periods, walking, lifting, and carrying."  He also commented that Plaintiff "has severe back pain that has not been adequately diagnosed and treated.  He needs a MRI to further evaluate his back pain.  He also needs to be seen by a psychiatrist to control his depression and suicidal thoughts."  (R. 504-06).

decision maker and a state agency physician in 2002;[15] (5) a consultative examination by

Jesse Morgan, M.D., in December 2004;[16] and (6) a consultative examination by Dr. Pasach

in January 2010.[17]

In addressing the same, the ALJ discounted Dr. Urso's opinion that Plaintiff was

permanently disabled because such an opinion is a finding of fact reserved to the

Commissioner. As for Dr. Urso's opinion on Plaintiff's physical limitations, the ALJ gave

the opinion "little weight." According to the ALJ, Dr. Urso "did not reference specific

objective medical findings to support his opinion," and the doctor's "hand written notes were

mostly concerned with medication control and there was little to no mention of any objective

findings, . . . [and there] was no evidence of a physical examination." (R. 559). The ALJ also

accorded "little weight" to Dr. Pasach's opinions on Plaintiff's employability and functional

capacity. In particular, the ALJ found that Dr. Pasach's opinions were based more on

Plaintiff's subjective reports than on objective findings, and his opinion on Plaintiff's

functional capacity was inconsistent with his statement that Plaintiff could shop and travel

---

[15]These nonexamining reviewers both opined that Plaintiff could perform light exertional work with postural limitations. (R. 477-84, 508-15).

[16]Dr. Morgan opined that Plaintiff essentially had an unremarkable examination and no physical limitations aside from certain postural restrictions. (R. 532-27).

[17]Consistent with other records or reports, Dr. Pasach gave impressions for history of compression fracture at T12, bipolar syndrome, and chronic pain syndrome with somatization of the trunk and lower extremities. He also suspected some neurological involvement and recommended that Plaintiff be reevaluated to rule out spinal cord injury or spinal stenosis. (R. 669-71). Dr. Pasach also completed a medical source statement wherein he opined, among other things, that Plaintiff could only sit for four hours in an eight-hour day, stand for one hour in an eight-hour day, and walk for one hour in an eight-hour day. (R. 676). Such restrictions essentially rendered Plaintiff disabled.

without assistance, walk a block at a reasonable pace, and had a normal gait and was able to walk on his heels and toes during the examination. (R. 559). As for Dr. Henley, the ALJ accorded "little weight" to her opinion on Plaintiff's mental capacity because "she indicated that the claimant was likely exaggerating his symptoms and that the results of the evaluation were questionable and the test results were invalid." (R. 555). The ALJ accorded "some weight" to Dr. Morgan's opinion that Plaintiff had no physical limitations. The ALJ gave "great weight" to the opinions rendered in 2002 by the state agency reviewers (one a physician and the other a "single decision maker") and the state agency psychologist, as their opinions were consistent with the objective evidence of record. (R. 560).

The ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). As for examining doctors, their opinions typically are entitled to more weight than the opinions of nonexamining doctors. *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). And, the reports of

nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence on which to base an administrative decision. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988) (quoting *Sharfarz,* 825 F.2d at 280). However, an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources. *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

Upon thorough consideration of the medical and psychological record, I find that the ALJ erred in considering the same. First, with respect to the opinions of Drs. Freid, Dee, McGregor, and Cervantes, as well as the opinion of Mr. Conti, Plaintiff is correct that the ALJ did not specifically state the weight accorded their opinions. *See* (R. 553–55). The ALJ's failure to do so is reversible error. *See Sharfarz*, 825 F.2d at 279. I cannot agree with the Commissioner's assertion that the ALJ's decision makes clear that he gave great weight to this evidence. In particular, while the ALJ noted the mental tasks that Mr. Conti believed Plaintiff could perform (R. 553-54), he did not address the seven moderate limitations identified by Mr. Conti or the counselor's assessment of anxiety. Although the ALJ fairly recounted Dr. Freid's report (R. 553), he did not indicate why he chose not to credit the psychologist's diagnosis of generalized anxiety disorder. Similarly, while the ALJ fairly recounted Dr. Dee's evaluation (R. 554), he did not mention that the psychologist recommended further evaluation for estimation of intellectual capacity and neuropsychological screening (R. 439). Likewise, although the ALJ acknowledged Dr. Cervantes' opinion that Plaintiff's back pain had not been adequately diagnosed and treated (R. 555), he did not mention that the doctor also opined that Plaintiff needed a MRI to further

18

evaluate his back and should see a psychiatrist (R. 506). As for Dr. Morgan, given the ALJ's determination of Plaintiff's functional capacity, it is unclear how the ALJ could have accorded "some weight" to Dr. Morgan's opinion that Plaintiff essentially had no limitations at all. And, although not addressed by Plaintiff, I note that while the ALJ accorded great weight, i.e., adopted, the opinion of one of the state agency psychologists (R. 560), he does not discuss the report from the other state agency psychologist or state the weight accorded that opinion.[18]

I am more troubled by the ALJ's consideration of the opinions of Drs. Pasach, Urso, and Henley and conclude the ALJ's review of the findings and opinions from these doctors was insufficient such that a remand is warranted. As for Dr. Henley, her opinion may be fairly read one of two ways, one of which is that Plaintiff had extreme and marked limitations despite the indications of invalid test results and possible malingering, and the other of which is as the ALJ read it, that her functional assessment was not reliable because of the test results and possible malingering. Without a clear indication as to the appropriate reading of the opinion, I conclude that the ALJ was duty-bound to clarify this before adopting the latter reading. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (directing ALJ to recontact a

_____

[18]That said, by my assessment of the medical record through Plaintiff's date last insured in December 2003, a conclusion that he was not disabled from all work appears supportable by substantial evidence. While the ALJ appears to have cherry-picked the evidence for matters supporting the conclusion, on the whole this record likely is not enough to carry the day for Plaintiff. However, Plaintiff also seeks SSI benefits, which necessitates that the later reports from Drs. Henley, Urso and Pasach be given a full and fair review and that a full and fair record be developed even at this late date.

claimant's medical source where the evidence received from the source is inadequate, that is, if it contains a conflict or ambiguity that must be resolved).

While the ALJ clearly could discount the opinions of Drs. Urso and Pasach that Plaintiff could not work or was disabled,[19] the ALJ's reasons for discounting their functional assessments are unpersuasive and unsupported by substantial evidence. For instance, Dr. Pasach's report included objective findings in addition to Plaintiff's subjective complaints. Absent some further explanation, I do not find it sufficient to discount the doctor's opinions because it appeared that the doctor relied primarily on Plaintiff's subjective complaints. As for the purported internal inconsistencies in Dr. Pasach's report, i.e., that Plaintiff had the ability to shop and travel without assistance, walk a block at a reasonable pace, walk with a normal gait, and walk on his heels and toes during the examination, such are not necessarily inconsistent with the doctor's opinion on Plaintiff's functional capacity for a full day's work.

Significantly, Dr. Pasach and Dr. Urso are the only doctors that examined Plaintiff from 2005 forward and their opinions are not inconsistent. And, as for Dr. Urso, he was the only treating doctor of record. Under the applicable standard, the ALJ was obliged to weigh his medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship;( 3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the

---

[19]A treating source's opinion that a claimant is unable to work is an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). While such an opinion is never entitled to controlling weight or special significance, where the record contains such an opinion, the ALJ must evaluate all the evidence to determine the extent that it is supportable by the record. *See* Social Security Ruling 96-5p, 1996 W.L. 374183, at *1-2 (S.S.A.).

medical issues at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). By my consideration, given Dr. Urso's long-term care, the ALJ's statement that he gave Dr. Urso's functional assessment "little weight" because the doctor did not reference specific objective findings to support his opinion is insufficient in light of the objective evidence that was revealed in this record.

Further, while not argued by Plaintiff, I must note that the above errors are compounded by the fact that the ALJ determined Plaintiff's mental and physical functional capacity on the basis of the reports rendered by nonexamining doctors in 2002 (R. 560)[20] when the decision was rendered in 2010, and that the ALJ utilized this older and possibly outdated evidence to discount the opinions of Drs. Henley, Urso, and Pasach, each of whom had at least an examining relationship with Plaintiff. In this circuit, "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Lamb,* 847 F.2d at 703 (quoting *Sharfarz*, 825 F.2d at 280).

In light of the findings above, Plaintiff's remaining claims, i.e., his third, fourth, fifth, and sixth allegations of error (Doc. 15 at 8-11), need not be addressed. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

---

[20]One of the state agency "physicians" purportedly relied upon by the ALJ was not a physician at all but a so-called "single decision maker." *See* (R. 484). I find it improper for the ALJ to rely on that opinion especially to the exclusion of examining doctors.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is not supported by substantial evidence or is not in

accordance with the correct legal standards, and I recommend that it be reversed and

remanded for further proceedings before the Commissioner consistent with this Report and

Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor

of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon

further pleadings.

Respectfully submitted this
15th day of February 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by

a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable Mary S. Scriven, United States District Judge
Counsel of Record